*213 Talbot, P.J.,
(dissenting). I respectfully dissent. While I agree with the majority’s description of the property rights accorded under the private roads act as being “akin to a private easement,” I do not agree with its conclusion that “the Taking Clause of Const 1963, art 10, § 2 is neither implicated nor offended by the act.” To the contrary, I would hold that the Taking Clause is both implicated and offended.
The majority reasons that the “private easement” permitted by the private roads act does not amount to a taking because it is merely a reasonable regulation of “property usage.” I disagree. The United States Supreme Court, in Nollan v California Coastal Comm, 483 US 825; 107 S Ct 3141; 97 L Ed 2d 677 (1987), addressed the issue whether a public right of way easement compelled by the government would constitute a taking or a mere restriction on land use.[1] Justice Scalia, writing for the majority, explained as follows:
Perhaps because the point is so obvious, we have never been confronted with a controversy that required us to rule upon it, but our cases’ analysis of the effect of other governmental action leads to the same conclusion. We have repeatedly held that, as to property reserved by its owner for private use, “the right to exclude [others is] ‘one of the most essential sticks in the bundle of rights that are com *214 monly characterized as property.’ ” Loretto v Teleprompter Manhattan CATV Corp, 458 US 419, 433; 102 S Ct 3164, 3175; 73 L Ed 2d 868 (1982), quoting Kaiser Aetna v United States, 444 US 164, 176; 100 S Ct 383, 391; 62 L Ed 2d 332 (1979). In Loretto we observed that where governmental action results in “[a] permanent physical occupation” of the property, by the government itself or by others, see 458 US, at 432-433, n 9, “our cases uniformly have found a taking to the extent of the occupation, without regard to whether the action achieves an important public benefit or has only minimal economic impact on the owner,” id., at 434-435. We think a “permanent physical occupation” has occurred, for purposes of that rule, where individuals are given a permanent and continuous right to pass to and fro, so that the real property may continuously be traversed, even though no particular individual is permitted to station himself permanently upon the premises. [Nolan, supra at 831-832.]
Similarly, because the private roads act permits the government to compel certain landowners to allow others the unfettered right to “pass to and fro” across their property, the resultant “private easement” would more properly be described as a taking than as a regulation of property usage. Id.
The majority notes that the private roads act “was intended to supplement the already existing common-law doctrine of easement by necessity and provide relief to private parties by creating access to landlocked private parties who required it, notwithstanding an absence of privity of contract.” Although there may be little practical difference between a common-law easement by necessity and a private road contemplated by the private roads act, the legal distinction is significant. The reason a common-law easement by necessity is not considered a taking has more to do with its origin than with its effect on the owner of the servient tenement. As noted in Judge Holbrook, Sr.’s *215 dissent in White Pine Hunting Club v Schalkofski, 65 Mich App 147, 151-152; 237 NW2d 223 (1975), the analytical basis for enforcing a common-law easement by necessity is the assumption that the parties who originally created the landlocked parcel intended that the owner of the landlocked parcel have access to the land over the other’s parcel. Accordingly, with a common-law easement by necessity, “all the court is really doing is enforcing the original intent of the parties.” Id. at 152. The Taking Clause is not implicated by the enforcement of a common-law easement by necessity because, whether by fact or legal fiction, the owner of the servient tenement is never required to give up any property right that he ever had. By contrast, the private roads act permits one party to limit another party’s exclusive possession of his private property without his express or implied consent.
Finally, the majority reasons that the private roads act does not implicate the Taking Clause because it does not “emanate” from the power of eminent domain. “Eminent Domain is the power of the sovereign to take property for ‘public use’ without the owner’s consent.” 1 Nichols, Eminent Domain (3d ed), § 1.11, p 1-7. Because the private roads act permits private parties to take “easements” for their own private use (under the state’s authority), I agree with the majority’s statement that the private roads act does not “emanate” from the power of eminent domain. However, I disagree with its corresponding conclusion that this fact removes the private roads act from the purview of the Taking Clause. Although the state constitution expressly provides that private property “shall not be taken for public use without just compensation,” Const 1963, art 10, § 2 (emphasis added), *216 the Michigan Supreme Court has explained that a taking for a private use is also prohibited:
“It is to be noted that few, if any, of the State Constitutions in terms prohibit the taking of property by authority of the State for uses that are not public. The characteristic provision found in the Constitutions of the several States, and in that of the United States as well, is to the effect that property shall not be taken for the public use without just compensation. Nevertheless, while the courts have not been in agreement on the precise meaning of the term ‘public use,’ it has been held, without a single dissenting voice, that the State does not have power to authorize the taking of the property of an individual without his consent for the private use of another, even on the payment of full compensation.” [Shizas v Detroit, 333 Mich 44, 50; 52 NW2d 589 (1952), quoting 18 Am Jur, Eminent Domain, § 34, pp 657-658.]
See also Poletown Neighborhood Council v Detroit, 410 Mich 616, 632; 304 NW2d 455 (1981) (“All agree that condemnation for a private use or purpose is forbidden.”).
Therefore, I do not accept the majority’s suggestion that the private roads act is somehow made constitutionally acceptable by the fact that it “has nothing to do with the taking by a public authority for a public purpose.”
In the eminent domain context, a condemnation for a private use cannot be authorized under the Taking Clause whatever its incidental public benefit. Poletown, supra at 632. Such a condemnation is considered to be for a “private use” if a private user is the primary beneficiary. See id. While this case does not involve an eminent domain condemnation, it is logical in all contexts to construe the Taking Clause to prohibit state-authorized takings for the primary benefit of private users. Accordingly, because it is *217 beyond serious dispute that the primary beneficiary of a taking authorized by the private roads act is the private party who initiates the taking, I would hold that the private roads act is, on its face, repugnant to Const 1963, art 10, § 2.
I would affirm.
Mackenzie, J., concurred.

 The precise issue in Nollan was whether a state commission violated the Taking Clause of the Fifth Amendment, made applicable to the states by the Fourteenth Amendment, when it required private landowners to convey a public right of way easement across their beachfront property as a condition to receiving a land-use permit. As an initial matter, the Court explained that, had the state simply compelled the plaintiffs to make a right of way easement across their property in order to increase public access to the beach (without conditioning their land-use permit on their agreeing to do so), it would have had “no doubt” that there would have been a taking. Id. at 831.